UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

AVI SIVAN, *et al*

*Defendants.*

Case No.2:24-cv-04484

Judge Diane Gujarati

Magistrate Judge Anne Y. Shields

---

**UNITED STATES' MOTION TO PRECLUDE
DEFENDANT AVI SIVAN'S EXPERT REPORT AND EXPERT TESTIMONY**

In accordance with the Court's March 30, 2026 docket text order, the United States moves to preclude Defendant Avi Sivan's expert report and expert testimony for three independent reasons. First, the expert report was served after the close of discovery. Second, even if, under Mr. Sivan's version of events, the expert report was served on the next to final day of discovery, it should be precluded because it unfairly prejudices the United States. Third, the subject matter of the expert report (and the presumptive testimony) is improper on the merits because it opines about questions of law rather than questions of fact, is insufficiently based on facts or data, is not the product of reliable methods and principles, and does not reflect a reliable application of methods and principles to the facts of the case.

*/s/ Danielle E. Sumner*
DANIELLE E. SUMNER
KIMBERLY R. PARKE
Trial Attorneys
Civil Division, Tax Litigation Branch
U.S. Department of Justice
P.O. Box 55

1

Washington, D.C. 20044
(202) 353-0300 (v – KP)
(202) 514-6508 (v-DS)
(202) 514-5238 (f)
Kimberly.Parke@usdoj.gov
Danielle.Sumner@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | Case No.2:24-cv-04484 |
| v. | Judge Diane Gujarati |
| AVI SIVAN, *et al* | Magistrate Judge Anne Y. Shields |
| *Defendants.* | |

**MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO PRECLUDE DEFENDANT AVI SIVAN'S EXPERT REPORT AND EXPERT TESTIMONY**

i

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................................... iv

INTRODUCTION ..................................................................................................................... 1

DISCOVERY SCHEDULING BACKGROUND .......................................................................... 1

DISCOVERY PRODUCTION BACKGROUND .......................................................................... 4

ARGUMENT ............................................................................................................................. 5

    I.    Legal Standard ........................................................................................................ 5

        a.    Disclosure deadlines regarding experts ....................................................... 5

        b.    Admissibility of expert testimony.................................................................. 6

    II.    Mr. Sivan's service of an expert report on March 5, 2026 was improper because expert discovery had closed. ................................................................................. 7

        a.    Mr. Sivan's Expert Report (and related testimony) should be precluded for untimeliness because to allow it would be unfairly prejudicial to the United States. ..... 8

        b.    Mr. Sivan's Expert Report (and related testimony) should be precluded because there is no justification for its untimely production. .............................................. 10

        c.    Mr. Sivan's Expert Report (and related testimony) should be precluded for untimeliness because it is unimportant to the questions of fact at issue. ..................... 14

    III.    The Service of an expert report on the second-to-last day of discovery is improper because it unfairly prejudices the nonmoving party. ....................................... 15

    IV.    The expert testimony predicated on this expert report is inadmissible under Federal Rule of Evidence 702. ...................................................................................... 16

        a.    Testimony predicated on this expert report will not help the trier of fact to understand the evidence or determine a fact in issue under Fed. R. Evid. 702(a). ........................ 16

        b.    The expert report, and any testimony predicated on the report, is not based on sufficient facts or data per Fed. R. Evid. 702(b). ............................................. 18

        c.    The expert report is not the product of reliable principles and methods per Fed. R. Evid. 702(c). ................................................................................... 19

        d.    The expert report does not reflect a reliable application of the principles and methods to the facts of the case per Fed. R. Evid. 702(d). ....................................... 20

CONCLUSION......................................................................................................................... 20

Certificate of Word Count in Accordance with Local Civil Rule 7.1(c) ................................... 22

Certificate of Service ............................................................................................................... 23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Curley v. United States*,
  791 F.Supp. 52 (E.D.N.Y. 1992) ...................................................................................19

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ...............................................................................................8, 15

*Donellan v. Ferag, Inc.*,
  26 F. App'x 72 (2d Cir. 2002) .....................................................................................9

*Hygh v. Jacobs*,
  961 F.2d 359 (2d Cir.1992) ..........................................................................................9

*Koppell v. N.Y. State Bd. of Elections*,
  97 F. Supp. 2d 477 (S.D.N.Y. 2000) .............................................................................8

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .......................................................................................................8

*In re Pfizer Inc. Sec. Litig.*,
  819 F.3d 642 (2d Cir. 2016) ..........................................................................................8

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
  No. 87 CIV. 0167 (JMC), 1990 WL 164859 (S.D.N.Y. Oct. 24, 1990), *order
  aff'd and remanded,* 118 F.3d 955 (2d Cir. 1997) .......................................10, 11, 16

*United States v. Chang An–Lo*,
  851 F.2d 547 (2d Cir.1988)..........................................................................................17

*Venite v. St. Luke's/Roosevelt Hosp.*,
  No. 01 CIV. 4067 (SAS), 2002 WL 1461493 (S.D.N.Y. July 3, 2002) ........................8, 10, 15

*Wolak v. Spucci*,
  217 F.3d 157 (2d Cir.2000)............................................................................................8

**Other Authorities**

Admin. Order No. 2025-15 ...............................................................................................2, 3

Federal Rule of Civil Procedure 26(a) ...............................................................................7

Federal Rule of Civil Procedure 26(e) ...............................................................................5

Federal Rule of Evidence 37 ................................................................................................. 7

Federal Rule of Evidence 702 ............................................................................. 8, 16, 18, 19, 20

Federal Rule of Evidence 1004 .......................................................................................... 17

**INTRODUCTION**

Plaintiff United States of America moves to preclude the testimony and report of Avi Sivan's proposed expert witness. Mr. Sivan first identified the expert when he produced the expert's report on March 5, 2026. The report is untimely, unfairly late, and proffers legal conclusions that are insufficiently based on facts or data.

Mr. Sivan had ample opportunities to identify an expert during the case's unusually prolonged discovery period, yet did not do so until discovery closed on February 2, 2026. The below chronology of events showcases the number of opportunities that Mr. Sivan allowed to pass him by before introducing an expert only after expert discovery had closed. Even if the Court determines that Mr. Sivan produced his expert report within the discovery window, his production of the expert report was unfairly prejudicial to the United States, as he produced the expert report the day before the close of discovery. This did not allow the United States sufficient time to review the report and depose the expert. Furthermore, Mr. Sivan's expert report should be precluded on the merits, because it only offers opinions that the United States may not rely on indirect proof of the contents of a missing document. Whether the United States may do so is a purely legal issue regarding admissibility, which is a question of law that is not subject to expert testimony; the report otherwise fails to meet any of the requisite elements of Fed. R. Evid. 702.

**DISCOVERY SCHEDULING BACKGROUND**

The parties jointly filed a Proposed Discovery Plan/Scheduling Order on December 17, 2024 (ECF No. 69-1), in which the United States "maintain[ed] no expert discovery is appropriate for either side." ECF 69-1 at 2. The only defendant to suggest a possible need for expert testimony was Regine Sivan (who is not liable for the 2000-2002 tax years involved in the

proposed expert report for Avi Sivan). *Id.* Mrs. Sivan stated in the Proposed Discovery Plan that she "maintains that determining the value of her principal residence may require expert testimony." *Id.* Nonetheless, the parties proposed that affirmative expert reports would be due July 15, 2025, and rebuttal reports due August 22, 2025, with depositions of experts to be completed September 22, 2025. *Id.*

On December 19, 2024, the Court entered a docket text order that included: "(3) Expert discovery shall be completed by October 6, 2025" -- two weeks longer than proposed by the parties -- but did not address when experts should be disclosed, when affirmative or rebuttal reports were due, or when expert depositions were to be completed. *Id.*

On January 14, 2025, counsel for Avi Sivan served his initial disclosures stating that, "At this time, the Defendant has not retained any experts but reserves the right to retain experts as discovery progresses." *See* Ex. 1.

On March 13, 2025, the Court entered a Scheduling Order that included, in pertinent part: "[t]he parties are directed to confer and to arrive at a detailed proposed discovery schedule, including any necessary expert discovery, that will most expeditiously allow this matter to be trial or dispositive motion practice ready. Such discovery shall be completed on or before December 19, 2025."

On August 19, 2025, the Court issued another scheduling order that reiterated the December 19, 2025 deadline for expert discovery. As a result of the lapse in government appropriations, which lasted from October 1, 2025 until November 12, 2025, the Eastern District of New York issued a blanket administrative stay tolling all scheduling orders for the duration of the shutdown plus two business days. *See* Admin. Order No. 2025-15.

On September 16, 2025, counsel for Mr. Sivan emailed government counsel indicating merely that, "[w]e anticipate hiring an expert in IRS transcript analysis and collection procedure." Ex. 2.

Subsequently, after the government shutdown, counsel for Mr. Sivan sent an email on November 17, 2025 asking counsel for the United States to identify what they believed were the adjusted discovery deadlines, post-shutdown. Ex 3. Counsel for the United States, Kim Parke, responded on November 19, 2025, indicating that all discovery would close on February 2, 2026, more particularly as follows:

> We believe that the EDNY Administrative Order extended the deadlines by 45 days. This would make the new schedule:
> - End of fact discovery:  Monday, February 2, 2026
> - End of expert discovery was still set to end on December 19, 2025, so it would currently end **Monday February 2, 2026**
> - Commencement of a dispositive motion was due January 20, 2025, so it would now end on Friday, March 6, 2026, . . .
>
> **If you still intend to call an expert, please let us know as soon as possible so that we can discuss any necessary expert discovery.**

Ex. 4 (Emphasis added).

Counsel for Mr. Sivan did not respond to this email. On December 4, 2025, counsel for Avi Sivan sent the following separate email to Counsel for the United States, Danielle Sumner:

> In your correspondence from yesterday, you inquired about balances due for certain years. This is something for which Avi would likely need to hire an expert. My understanding is that we did not amend the expert discovery deadline (per Paragraph 3) when the Joint Motion to Extend to Fact Discovery Deadline. To avoid any needless disputes over timeliness, What [sic] is your position on the deadline to produce initial expert reports based on the government shutdown? [emphasis added]

Ex. 5.

3

On December 8, 2026, Counsel for the United States, Danielle Sumner, sent an email opining that the expert discovery deadline was February 4, 2026 – two days later than Ms. Parke had opined, as follows:

> …EDNY's blanket administrative stay tolled all scheduling order deadlines for the duration of the shutdown plus two business days. The shutdown lasted 43 days, and the original expert discovery deadline was December 19, 2025. Therefore 43 days from December 19th to the next business day, plus two additional business days, would be Wednesday, February 4, 2026. That is when we believe expert discovery to close.

Ex 6.

On February 3, 2026, when granting the motion to withdraw issued by Mrs. Sivan's former counsel, the Court's text Order stated in part:

> All deadlines in this action are stayed for thirty (30) days to allow Ms. Sivan to obtain new counsel.

Also, on February 3, 2026, the Court's subsequent text Order stated:

> [T]he Court will extend fact discovery, solely for the purpose of taking Mr. Ovadia's deposition remotely from South Africa, for an additional six months, as requested. In light of the thirty-day stay of all deadlines previously ordered by this Court, the parties shall have until September 4, 2026 to conduct Mr. Ovadia's deposition. **All other discovery is closed.** [emphasis added].

Accordingly, all discovery aside from the deposition of Avraham Ovadia closed on February 3, 2026, as stated in the Court's order. Nevertheless, on March 5, 2026, over a month after the close of discovery, for the first time, Mr. Sivan disclosed his expert witness and furnished the United States with an expert report. Ex. 7.

## DISCOVERY PRODUCTION BACKGROUND

Production in the above-captioned case has been continuous and ongoing, given the shifting nature of Mr. Sivan's claims and defenses. *See* Dkt. Text Order dated March 13, 2025 ("[T]he Government submitted a letter indicating that, since the December conference, Sivan has

4

changed his litigation position, and that the concessions set forth during the December conference were retracted . . . The transcript may well be construed as the Government suggests."). Nevertheless, the United States has stayed abreast of Mr. Sivan's transmuting arguments. As discussed further in Section II, *infra*, the United States has made timely productions in response to last-minute production requests and deposition notices from Mr. Sivan, with one inconsequential exception.

The United States made its most recent productions to Avi Sivan, *inter alia*, on December 9, 2025; January 27, 2026; February 20, 2026; and March 4, 2026. The United States' only arguably belated production was a single, six-page document produced on March 4, 2026, which the United States acknowledges was inadvertently produced later than it should have been. Ex. 8. However, the March 4th production provided no new information to Mr. Sivan. Rather, it merely reiterated information contained in productions made to Mr. Sivan on December 9, 2025.

**ARGUMENT**

## I.  Legal Standard

### a.  *Disclosure deadlines regarding experts*

Rule 26(a) of the Federal Rules of Civil Procedure states that parties are required to disclose the identity of anyone who "may be used at trial" to present expert testimony "at the times and in the sequence directed by the court." Fed.R.Civ.P. 26(a)(2)(a), (c). Additionally, Rule 26(b)(4)(A) states that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided." Rule 37(b)(2) further provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . ., the court

5

in which the action is pending may make such orders in regard to the failure as are just. . .” *Id.* at 37(b)(2).

Courts in the Second Circuit evaluate the following factors when analyzing whether to preclude an expert report, and testimony based on that report, submitted after the deadline: (1) prejudice or surprise; (2) ability to cure; (3) disruption of trial efficiency; (4) the party's explanation for the failure to comply with a scheduling order; (5) the importance of the testimony to be precluded; and (6) bad faith or willfulness. *See Venite v. St. Luke's/Roosevelt Hosp.*, No. 01 CIV. 4067 (SAS), 2002 WL 1461493, at *2 (S.D.N.Y. July 3, 2002); *see also Wolak v. Spucci,* 217 F.3d 157, 161 (2d Cir.2000) (citing *Dunlap–McCuller v. Riese Organization,* 980 F.2d 153, 158 (2d Cir.1992)).

b.  *Admissibility of expert testimony*

For testimony of an expert witness to be admissible under Federal Rule of Evidence 702, the proponent must demonstrate that it is more likely than not that the testimony (1) will "help the trier of fact to understand the evidence or determine a fact in issue," (2) be "based on sufficient facts or data," (3) be the "product of reliable principles and methods," and (4) "[reflect] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). In applying this rule, courts must play the role of a gatekeeper ensuring that any expert evidence submitted to a jury is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The proponent bears the burden of showing that the opinion testimony is relevant and reliable. *See Koppell v. N.Y. State Bd. of Elections*, 97 F. Supp. 2d 477, 479 (S.D.N.Y. 2000); *see also In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016).

On December 1, 2023, two amendments to Rule 702 became effective. The first change clarified that the proponent of the expert witness testimony bears the burden of proving, by a preponderance of the evidence, that the testimony meets the *Daubert* standard. *See* 38 No. 11 Fed. Litigator NL 2. The Advisory Committee Notes to the 2023 Amendments criticized courts that had previously held that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendment. Additionally, Rule 702(d) was amended to emphasize that "the expert's opinions must reflect a reliable application of scientific principles and methods," clarifying that experts not only must utilize such reliable principles and methods but also that courts must require that the expert's opinions are tied to those principles and methods. 38 No. 11 Fed. Litigator NL 2. This amendment ensures that each expert opinion "must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendment. The Notes reiterate that "[j]udicial gatekeeping is essential." *Id.*

Furthermore, the Second Circuit mandates exclusion of expert testimony that expresses a legal conclusion. *See, e.g., Hygh v. Jacobs,* 961 F.2d 359, 364 (2d Cir.1992) ("Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury."); *see also Donellan v. Ferag, Inc.*, 26 F. App'x 72 (2d Cir. 2002) (affirming district court's exclusion of portion of expert testimony on safety engineering that would have communicated to jury that defendant owed plaintiff a duty of care).

II.    **Mr. Sivan's service of an expert report on March 5, 2026 was improper because expert discovery had closed.**

7

The language of the Court's order dated February 3, 2026, is clear and unambiguous. The order directed that the deposition of Avraham Ovadia take place by September 4, 2026. It further specified that "[a]ll other discovery is closed."

Notwithstanding the two-day discrepancy in the post-shutdown expert discovery deadline posited by separate counsel for the United States, the court's February 3 order terminating discovery controls. When Mr. Sivan served his expert's report for the first time on March 5, 2026, discovery had been closed for more than a month. Mr. Sivan did not move the court for an extension of discovery after the Court's order, nor did he move for the court to reconsider its discovery order. Instead, Mr. Sivan merely served the untimely report on the United States.

Of the factors that the Second Circuit has identified in considering whether to preclude an untimely expert witness report, Mr. Sivan's late-filed report is unfairly prejudicial, ill-justified, and unimportant. *See Venite v. St. Luke's/Roosevelt Hosp.*, No. 01 CIV. 4067 (SAS), 2002 WL 1461493, at *2 (S.D.N.Y. July 3, 2002).

   a. *Mr. Sivan's Expert Report (and related testimony) should be precluded for untimeliness because to allow it would be unfairly prejudicial to the United States.*

Courts in the Second Circuit have previously rejected untimely submitted expert reports for being unfairly prejudicial. *See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, No. 87 CIV. 0167 (JMC), 1990 WL 164859 (S.D.N.Y. Oct. 24, 1990), *order aff'd and remanded,* 118 F.3d 955 (2d Cir. 1997). In *Softel*, both the plaintiff and defendant produced timely expert reports, well before the January 30, 1990 discovery cutoff. *Id.*, at *1. However, at a pretrial conference on December 6, 1989, the plaintiff indicated that it was substituting a new expert. *Id.,* at *2. The Magistrate Judge gave the plaintiff leave to serve the new expert's report by December 22, 1989, *five weeks* before the close of discovery, so as to "allow the Dragon

8

defendants time to study the new report" and to permit time for expert depositions. *Id*. On December 21, 1989, *one day* before the close of discovery, the plaintiff moved for an indefinite extension of the expert report deadline on the grounds that its new expert had not had sufficient time to prepare the report. *Id.* The plaintiff's explanation was that the data the new expert needed to review was being withheld by the prior expert due to a dispute over fees. *Id.* Subsequently, at a conference on January 12, 1990, the Magistrate Judge denied the plaintiff's extension of time to file its new expert report and precluded the plaintiff from offering the new expert's testimony. *Id.* This decision was upheld by both the District Court and the Second Circuit. 118 F.3d 955 (2d Cir. 1997).

The *Softel* court's reasoning is applicable to the facts in the above-captioned case because "this is not a situation where [the party looking to late-file an expert report] unexpectedly discovered the existence of an important witness. To the contrary, [the late-filing party] may have been considering obtaining a new expert for several months." *Id.*, at *5. Likewise, Mr. Sivan's counsel indicated as early as September 16, 2025 that he anticipated bringing in an expert. Ex. 2 ("We anticipate hiring an expert in IRS transcript analysis and collection procedure."). However, at no point after that did Mr. Sivan's counsel communicate when the United States could expect to receive an expert report. Instead, Mr. Sivan's counsel furnished the report on the government on March 5, 2026, an entire month after this Court had closed all discovery (except for Avraham Ovadia's deposition). Though counsel for the United States was not surprised that Mr. Sivan had engaged an expert, the United States was nevertheless deeply prejudiced by Mr. Sivan's choice to furnish the report at the eleventh hour. Having a vague inkling that a party may produce an expert report is not sufficient to counter the undue prejudice caused by producing an expert report over a month past the close of expert discovery.

9

b.  *Mr. Sivan's Expert Report (and related testimony) should be precluded because there is no justification for its untimely production.*

The untimeliness of the expert report is unwarranted, as Mr. Sivan had ample time to timely produce an expert report. Discovery in this case has been prolonged well past the discovery lifespan of normal litigation. It has been nearly sixteen (16) months since the Court first entered a discovery plan. *See* Dkt. Text Order dated December 19, 2024. Fact discovery in this case has been extended three times, while expert discovery has been extended twice. Despite the ample time he has had to prepare and submit an expert report, Mr. Sivan still did not do so until March 5, 2026.

Furthermore, Mr. Sivan cannot allege that his expert report was delayed because he did not receive certain productions from the United States until calendar year 2026. This justification does not hold water, as it is contradicted by the contents of the report itself. The documents that the United States produced after January 1, 2026 had no effect on Mr. Sivan's expert report, because the expert report does not address or analyze a single one of those documents. *See* Ex. 9 at 11. The below table lists every document that Mr. Sivan's expert, Peter Salinger, states that he reviewed as part of his report.

| Document Mentioned in Report | Beginning Bates # of Document | Date and Source of Production |
| --- | --- | --- |
| Account Transcripts for Mr. Sivan for year 2000 | US-0001416 | Produced by US on 1/15/2025 |
| Account Transcripts for Mr. Sivan for year 2001 | US-0001420 | Produced by US on 1/15/2025 |
| Account Transcripts for Mr. Sivan for year 2002 | US-0001423 | Produced by US on 1/15/2025 |
| Form 4340 for Mr. Sivan for year 2000 | US-0001291 | Produced by US on 1/15/2025 |
| Form 4340 for Mr. Sivan for year 2001 | US-0001304 | Produced by US on 1/15/2025 |
| Form 4340 for Mr. Sivan for year 2002 | US-0001317 | Produced by US on 1/15/2025 |
| OIC Case History Listing for Offer #1000997776 | US-0001451 | Produced by US on 3/27/2025 |

| Archive History Transcript for Avi and Regine Sivan | US-0001454 | Produced by US on 3/27/2025 |
|---|---|---|
| Individual Master File Transcripts for Avi Sivan for years 2000, 2001, and 2002 | US-0004185 | Produced by US on 9/18/2025 |
| Tax Module Transcripts for Avi Sivan | US-0004232 | Produced by US on 9/18/2025 |
| AOIC Printed Screenshots for Offer | REVI-USA-0014331 REVI-USA-0014334 REVI-USA-0014337 | Produced by US on 12/09/2025 |
| Amended Offer in Compromise Form 656 for Offer #1000997776 | SIVANAR002865 | Produced by Mrs. Sivan on 3/29/2025 |

Ex. # at 11.

As illustrated by the above table, none of the documents that Mr. Salinger avers he reviewed were produced by the United States later than December 9, 2025.

The United States was not provided with a reply in the Court's April 13, 2026 scheduling order. However, it has reason to believe, based on prior communications, that Mr. Sivan will argue that his late production of his expert report is justified by what he wrongly calls the United States' late production. The United States' production schedule did not cause Mr. Sivan's late disclosure. Aside from the March 4 document, the other documents that were produced by the United States after January 1, 2026 that were related to Mr. Sivan's 2000-2002 liabilities were produced in response to Mr. Sivan's Rule 30(b)(6) deposition of the IRS, which did not occur until January 29, 2026. Prior to Mr. Sivan's Rule 30(b)(6) deposition of Revenue Officer ("RO") Gail Martin, Mr. Sivan did not make clear to the United States that the payroll documents of IRS employee James Young were relevant to the parties' claims or defenses.

Although he had previously indicated that he intended to take a 30(b)(6) deposition of the IRS, counsel for Mr. Sivan did not email counsel for the United States with a subpoena and a 30(b)(6) notice of deposition until January 22, 2026, merely 11 days before the close of fact

11

discovery (as calculated by the parties in light of the government shutdown). Ex. 10; Ex. 11. The United States nevertheless managed to have a 30(b)(6) witness sit for the deposition on January 29, 2026, within the week. During the deposition, counsel for Mr. Sivan made it clear that he intended to argue that the Collection Statute Expiration Date ("CSED") for Mr. Sivan's 2000-2002 tax liabilities was not properly tolled because the IRS employee who signed the Form 656 did not have the proper delegated authority to do so. Consequently, counsel for the United States realized that personnel records related to IRS employee James Young were relevant to the issue of Mr. Sivan's 2000-2002 tax liability, and needed to be speedily located and produced. Subsequently, after the deposition, the United States acted quickly to meet with multiple administrative, payroll, and senior advisory officials at the IRS in order to track down and produce Mr. Young's personnel documents. The United States produced these documents by February 20, 2026, merely three weeks after the 30(b)(6) deposition. Ex. 12; Ex. 13.

On December 9, 2025, in response to Requests for Production from Mr. Sivan, counsel for the United States made supplemental productions of multiple documents generated by an IRS computer program called "Automated Offers in Compromise," or "AOIC," in accordance with Federal Rule of Civil Procedure 26(e). These documents comprised (1) an AO Offer for Avi Sivan's 2011 Offer in Compromise, (2) an Offer History for Avi Sivan's 2011 Offer in Compromise, and (3) Remarks and Case History for Avi Sivan's 2011 Offer in Compromise. Ex. 14: Ex. 15; Ex. 16. These documents established that Avi Sivan's Offer in Compromise was accepted for processing by the IRS on October 19, 2011. The United States contextualized these productions in a formal letter to counsel for Mr. Sivan dated December 3, 2025. Ex 17.

On January 27, 2026, two days prior to the 30(b)(6) deposition of RO Martin, the United States produced a blank, template version of the Form 656 ("Offer in Compromise") that was in

effect in 2011. Ex 18.[1] Additionally, on January 27, 2026, the United States produced via formal letter to Mr. Sivan's counsel, Jeffrey Pittard, the full names and job titles of each IRS employee whose Standard Employee Identifier ("SEID") appeared on the AOIC Offer History for Offer Number 1000997776, REVI-USA-0014334-35, which the United States had previously produced to Mr. Sivan on December 9, 2025. Ex. 15; Ex. 19. In the letter, the United States stated that the name and job title of the IRS employee who had signed in Mr. Sivan's 2011 Form 656 letter for processing was James Young, Tax Examining Technician.

On February 20, 2026, the United States produced to opposing counsel several documents that comprised payroll information of an IRS employee departed from the Service over a decade prior. Ex 12; Ex. 13. The United States became aware that these documents were relevant to this case at Mr. Sivan's 30(b)(6) deposition of RO Martin that occurred on January 29, 2026, merely two days before the end of fact discovery. During the deposition, Mr. Pittard's line of questioning made clear that he believed the position of former IRS employee James Young was going to be dispositive of whether the tolling of the CSED began on October 19, 2011. Subsequently, the United States coordinated with the IRS to identify and produce these documents by February 20, 2026, only twenty-two (22) days after the United States learned that the documents were relevant.

On that same date of February 20, 2026, the United States sent Mr. Pittard a formal letter contextualizing the documents it produced. Ex. 20. Specifically, this letter clarified that, while James Young's job title when he was hired by the IRS was "Tax Examining Clerk," his job title

---

[1] On that same date, the United States also produced several AOIC documents that pertained to Regine Sivan and are not relevant to Mr. Sivan's 2000-2002 liabilities or the expert report.

when he signed in Mr. Sivan's Form 656 on October 19, 2011 was "Tax Examining Technician." *Id.*

Finally, the additional document that counsel for the United States produced to Mr. Sivan on March 4, 2026 (which Mr. Sivan's attorney requested at the 30(b)(6) deposition of an IRS Revenue Officer on January 29, 2026) was the AOIC Transaction Summary for Avi Sivan's 2011 Offer in Compromise. Ex. 21. This document was also generated by the same AOIC computer program that was used to generate the documents produced on December 9, 2025. Unsurprisingly, the information as to the date the OIC was accepted for processing that is contained in the March 4 document is identical to the information contained in the documents produced on December 9, 2025, merely in a different format that shows the data broken out serially for each tax period that was included in offer.

Consequently, the March 4 document provides no new information to Mr. Sivan regarding the crucial date that commenced the tolling of the statute of limitations, but rather merely corroborates the information that the United States had already provided on December 9, 2025. Even if it *had* provided new information, that new information was irrelevant to the expert report, as the report does not mention this AOIC document at all. Clearly, the finalization of the expert report was not held up by the late production of this document, as the report does not even mention it, let alone analyze it.

    c.   *Mr. Sivan's Expert Report (and related testimony) should be precluded for untimeliness because it is unimportant to the questions of fact at issue.*

For reasons that overlap with the United States' more substantive *Daubert* analysis in Part IV, *infra*, the expert report submitted by Mr. Sivan is not of particular importance to his case, as it contains legal arguments rather than factual analyses based off scientific or technical

14

methodologies. Consequently, per the factors laid out in *Venite v. St. Luke's/Roosevelt Hosp.*, Mr. Sivan's expert report is substantively unhelpful. The report hinges on the fact that neither party was able to produce the original Form 656 that was submitted by Mr. Sivan for tax periods 2000-2002 and accepted for processing via signature authority by a duly authorized IRS official on October 19, 2011. The report argues that, without this original Form 656, there is simply not enough secondary evidence in the world to substantiate the date that the IRS began processing Mr. Sivan's Offer in Compromise ("OIC"), and thus begin tolling the CSED. *See* No. 01 CIV. 4067 (SAS), 2002 WL 1461493, at *2 (S.D.N.Y. July 3, 2002); Ex. 9. As previously discussed, the expert report does not analyze the documents that the United States has produced to support its argument that the tolling of the CSED began on October 19, 2011, beyond merely confirming that the expert reviewed them. *Id.* at 11. Consequently, the expert report does not assist Mr. Sivan in proving that the commencement of the CSED tolling did not occur on October 19, 2011; nor does it prove, let alone analyze, whether the United States' production is insufficient.

III.    **The Service of an expert report on the second-to-last day of discovery is improper because it unfairly prejudices the nonmoving party.**

Even should this Court determine that Mr. Sivan's expert report was duly furnished before the close of discovery, the consequences of not precluding Mr. Sivan's expert report (and any resulting expert testimony) at this stage would severely and unduly prejudice the United States. Federal Rule of Civil Procedure 26(a)(2)(B) states that a deposition of an expert may be conducted only after the expert report is provided. Here, even if the Court finds that Mr. Sivan furnished the expert report on the second-to-last day of expert discovery, is unrealistic to contemplate that the United States would be able to notice, coordinate, prepare, and take the expert's deposition in the single remaining day.

15

The Magistrate Judge in *Softel* had initially ordered the plaintiffs to produce their new expert witness report to opposing counsel five weeks before the close of discovery "to prevent further delay in discovery and prejudice to defendants." *Id.*, at \*4. Here, Mr. Sivan's furnishing of his expert witness report occurred merely a single day before the close of discovery. The United States was unaware that Mr. Sivan had hired an expert, much less the identity of that expert, until the second-to-last day of discovery. This rendered it impracticable for the United States to analyze the report, take any expert discovery, or consider whether it needed a rebuttal expert, let alone obtain one and produce a timely rebuttal expert report.

Mr. Sivan may allege that the lateness of the expert report is excused by eleventh hour production of additional documents by the United States, but that argument is foreclosed to him for the reasons explored in Section II.b., *supra*.

**IV.    The expert testimony predicated on this expert report is inadmissible under Federal Rule of Evidence 702.**

a. *Testimony predicated on this expert report will not help the trier of fact to understand the evidence or determine a fact in issue under Fed. R. Evid. 702(a).*

The expert report produced by Mr. Sivan on March 5, 2026 fails to meet the standards imposed by Federal Rule of Evidence 702. The report asserts that there is insufficient admissible evidence for the IRS to prove that a delegated official signed, and thus "accepted for processing" an Offer in Compromise (Form 656) ["OIC"] on October 19, 2011. The gist of the expert report is that the IRS may not prove the contents of a missing document by evidence other than the missing document. The report is replete with conclusory statements to that effect, as demonstrated in the below table:

| Page Citation | Quotation |
|---|---|

16

| Page 3 | "Without the Form 656, it cannot be verified that the TC480 input date was the same day that an authorized IRS official signed the Form 656." |
|---|---|
| Page 5 | "[T]he original Form 656 . . . [is] necessary to substantiate both the IRS's substantive determinations and any statutory consequences arising from the offer, including suspension of the Collection Statute Expiration Date." |
| Page 6 | "When Form 656 is missing from the administrative file, the IRS cannot . . . reliably establish the timing or duration of any asserted suspension of the Collection Statute Expiration Date." |
| Page 7 | "Later-created summaries, processability determinations, transcript entries reflecting TC 480, reconstructed timelines, or assumptions based on normal processing practices do not independently establish that an authorized IRS official signed the Form 656." |
| Page 8 | "Because responsibility for maintaining and preserving the offer file rests with the Service under IRM 5.8, reliance on an amended Form 656 does not cure the evidentiary gap or support suspension of the Collection Statute Expiration Date." |
| Page 10 | "[R]eliance on transcript entries or reconstructed timelines in lieu of preserved enforcement records does not cure the evidentiary deficiency created by the absence of the underlying file." |
| Page 11 | "Where documents such as Form 656 are missing or enforcement records have been lost or destroyed, the administrative record is incomplete and cannot reliably substantiate statute-suspending events." |
| Page 11 | "In the absence of the actual Form 656, the IRS cannot verify when and whether an authorize IRS employee signed a Form 656." |

*See* Ex. 9.

The report concludes that the IRS may not rely on secondary evidence to prove when and by whom Mr. Sivan's 2011 OIC was signed. However, that issue is governed purely by the application of the Federal Rules of Evidence to the documentary entries and can only be determined by the Court. *See* Fed. R. Evid. 1004; U*nited States v. Chang An–Lo*, 851 F.2d 547, 557 (2d Cir.1988) ("The admissibility of secondary evidence is within the broad discretion of the trial judge."). Any expert testimony towards this point would be both irrelevant and a waste of judicial resources.

Furthermore, the report does not analyze any of the evidence produced by the United States in support of its assertion that the CSED tolling began on October 19, 2011. The report cursorily acknowledges that the expert reviewed certain documents, and that although those documents "indicate the entry of a TC480 dated October 19, 2011, none of those documents provide the necessary information to determine who signed the initial Form 656 submitted for Offer #1000997776, the job title of the person, if any, who signed that Form 656, nor the date that Form 656 was signed by an authorized IRS official, all of which are required to suspend the CSED for Mr. Sivan's 2000, 2001, and 2002 tax years." *See* Ex. 9 at 11; Section II.b., *supra*. This statement reiterates the improper legal conclusion that the United States may not produce secondary evidence to support its claims. Moreover, the report is not based on the facts and would confuse any trier of fact, as the United States *did* produce documentation on February 20, 2026 that established the identity and job title of the person who signed Mr. Sivan's 2011 OIC. Ex. 12; Ex. 13.

Finally, the events recorded in the documents produced by the United States in support of its assertion that the tolling for Mr. Sivan's 2000-2002 liabilities began on October 19, 2011 illustrate the dates on which certain activities are recorded to have occurred. There is nothing about these documents, or the issue of when the OIC was received and signed by the IRS in general, that requires "expertise." Accordingly, expert testimony on this issue is superfluous and unnecessary.

   b. *The expert report, and any testimony predicated on the report, is not based on sufficient facts or data per Fed. R. Evid. 702(b).*

As discussed in Section II.b. and Section IV.a., *supra*, there is no analysis of the specific facts related to the CSED tolling of Mr. Sivan's 2000-2002 liabilities in the report. Rather, the

18

report details perceived shortcomings of the United States' secondary evidence and substantiates those alleged shortcomings with vague citations to various Internal Revenue Manual ("IRM") sections. However, bare citations to general IRM provisions do not sufficiently address, let alone analyze, the specific facts at issue as required by Fed. R. Evid. 702(b). Additionally, the IRM does not have the force and effect of law, rendering both the factual and legal conclusions of the report insufficient. *See Curley v. United States*, 791 F.Supp. 52, 55 (E.D.N.Y. 1992).

    c. *The expert report is not the product of reliable principles and methods per Fed. R. Evid. 702(c).*

As previously stated, the expert report proffers mere legal conclusions and substantiates them by citing to various, non-binding sections of the IRM. The report does not contain any substantive analysis based on reliable principles and methods because they are inapplicable to the facts at issue. The parties dispute whether, in the absence of the original Form 656 ("Offer in Compromise") submitted by Avi Sivan in 2011 for his 2000-2002 tax liabilities and received by the IRS, the United States has produced sufficient evidence to establish that Mr. Sivan's 2011 OIC was nevertheless received and signed in for processing by a duly authorized official of the IRS on October 19, 2011, thereby commencing the tolling of the CSED for the 2000-2002 liabilities on that date.[2]

As the report does not acknowledge several of the documents produced by the United States toward that end, it also did not analyze them through a framework of reliable principles and methods per Fed. R. Evid. 702(c). Although the expert purports to rely on his experience as a

---

[2] Mr. Sivan has produced no evidence to the contrary.

former employee of the IRS in addressing how he believes OICs should be handled by the IRS generally, that testimony does not amount to an expert analysis. Nor do the facts at issue call for an expert analysis. Again, whether the documents produced by the United States are admissible under the best evidence rule, despite being secondary evidence, is a question of law for the Court to decide.

> d. *The expert report does not reflect a reliable application of the principles and methods to the facts of the case per Fed. R. Evid. 702(d).*

As previously discussed in Section II.b and Section IV.b.., *supra*, the expert report does not address the specific facts of the case. Nor does it utilize reliable principles and methods in analyzing those facts, as an agency's non-binding internal guidance policies do not amount to such. *See* Section IV.b. Consequently, there is no way that the report could satisfy the requirements of Fed. R. Evid. 702(d).

## CONCLUSION

The United States should not be burned because Mr. Sivan played with fire by waiting until the twilight of discovery to build his case. The expert report produced by Mr. Sivan on March 5, 2026 was untimely, unfairly prejudicial to the United States even if it was timely, and inadmissible on the merits under Fed. R. Evid. 702. For those reasons, the United States moves that Mr. Sivan's expert report, and any related expert testimony, be precluded from any use in this case.

/s/ Danielle E. Sumner
Kimberly R. Parke
Danielle E. Sumner
Trial Attorneys
Civil Division, Tax Litigation Branch
U.S. Department of Justice
P.O. Box 55

Washington, D.C. 20044
(202) 353-0300 (v – KP)
(202) 514-6508 (v-DS)
(202) 514-5238 (f)
Kimberly.Parke@usdoj.gov
Danielle.Sumner@usdoj.gov

21

**CERTIFICATE OF WORD COUNT IN ACCORDANCE WITH LOCAL CIVIL RULE 7.1(C)**

In accordance with Local Civil Rule 7.1(c), I certify that this motion contains 4,386 words, which does not exceed the 8,750 words permitted. I relied on the word count feature of Microsoft Word to determine the number of words in this memorandum, not including the caption, signature blocks, and certificates.

*/s/ Danielle E. Sumner*
DANIELLE E. SUMNER
Trial Attorney, Civil Division
Tax Litigation Branch

## CERTIFICATE OF SERVICE

I certify that on April 15, 2026, I served the United States' Motion to Preclude Avi Sivan's Expert Report, as well as the Supporting Memorandum and all exhibits, by email upon Mr. Sivan's counsel, Jeffrey Pittard, at JPittard@fbtgibbons.com. I also served foregoing documents upon counsel for Avraham Ovadia, Richard Kestenbaum, at rkestenbaum@kmtaxlaw.com. Finally, I caused a paper copy of the foregoing documents to be mailed via First-Class mail to Regine Sivan, pro se, at the below address:

Regine Sivan
3 White Pine Lane
Great Neck, NY 11023

/s/ Danielle E. Sumner
DANIELLE E. SUMNER
Trial Attorney, Civil Division
Tax Litigation Branch

23